**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Mohammad Kazerouni, Esq. (SBN 252835)
mike@kazlg.com
2700 N. Main Street, Ste. 1000
Santa Ana, California 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN 227183)
bob@westcoastlitigation.com
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for Plaintiff,

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

Eric Knutson, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

Sirius XM Radio Inc.,

Defendants.

Case No. 12cv-418-AJB-NLS

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Hearing Date: June 29, 2012
Hearing Time: 1:30p.m.
Courtroom: 12

Hon. Anthony J. Battaglia

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

## TABLE OF CONTENTS

I. INTRODUCTION……………………………..………………………………………1

II. STATEMENT OF FACTS……………………...………...…………………...……….3

III. ARGUMENT…..………...……………………………………...………………………..5

A. ARBITRATION CANNOT BE COMPELLED UNDER THE FAA GIVEN THAT DUE TO THE LACK OF MUTUAL ASSENT TO THE TERMS OF THE PURPORTED CONTRACT, THERE IS NO VALID AND ENFORCEABLE AGREEMENT BETWEEN THE PARTIES TO ARBITRATE....................................5

1. Sirius' Failure to Provide Plaintiff With the Customer Agreement Until After the Deadline for Plaintiff to Reject the Terms of the Contract Had Expired Precludes Any Finding of Mutual Assent to the Terms of the Purported Contract……………6

2. There Was No Mutual Assent to the Arbitration Clause of the Customer Agreement Given That Plaintiff's Failure to Read Said Clause Was Due To The Arbitration Clause's Inconspicuous Nature…………………………………………………10

B. PLAINTIFF WILL NOT BE ABLE TO VINDICATE HIS STATUTORY RIGHTS UNDER THE TCPA STATUTE IF HE IS ORDERED TO ARBITRATION………..15

C. PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF CANNOT BE ARBITRATED………………………………………………………………...18

D. *AT&T MOBILITY V. CONCEPCION* DOES NOT REQUIRE ARBITRATION; TO THE CONTRARY, IT PRECLUDES ARBITRATION HERE………………………21

E. THE CUSTOMER AGREEMENT IS UNENFORCEABLE AS IT IS AN UNCONSCIONABLE ADHESION CONTRACT……………………………………23

IV. CONCLUSION…………………………………………………………………………25

## TABLE OF AUTHORITIES

**Federal Cases**


*Arellano v. T-Mobile USA, Inc.*,
2011 WL 1842712 (N.D. Cal. May 6, 2011)…...20, 21

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (Apr. 27, 2011)…..passim

*Boyer v. AT&T Mobility*,
2011 WL 3047666 (S.D. Cal., July 25, 2011)…7

*Bischoff v. DirecTV, Inc.*,
180 F.Supp.2d 1097 (2002)…..8, 9, 12

*Califano v. Yamasaki,*
442 U.S. 682 (1979)…...21

*Chiron Corporation v. Ortho Diagnostics Systems, Inc.*,
207 F.3d 1126 (9th Cir. 2000)…6

*Davis v. O'Melveny & Myers*,
485 F.3d 1066 (9th Cir. 2007)…..22, 23

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)…15

*Green Tree Financial Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)…...16, 17

*Hamby v. Power Toyota Irvine*,
798 F.Supp. 2d. 1163 (S.D.Cal.)…22

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003)…..5

*In Re Pizza Time Theater Sec. Lit.*,
112 F.R.D. 15 (N.D. Cal. 1986)…...6

*Kanbar v. O'Melveny & Myers,*
2011 WL 2940690 (N.D.Cal.)…22, 23

*Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*,
313 U.S. 487 (1941)…6

*Klussman v. Cross Country Bank,*
134 Cal.App.4th 1283 (2005)…19


Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

*Kristian v. Comcast*,
446 F.3d 25 (1st Cir. 2006)…………………………………………………...2, 16, 17

*Lifescan, Inc. v. Pernaier Diabetic Services, Inc.*,
363 F.3d 1010 (2004)………………………………………………………………...5

*Lozano v. AT&T Wireless*,
216 F. Supp.2d 1071 (2002)…………………………………………………………9

*Meridian Project Systems, Inc. v. Hardin Const. Co., LLC*,
426 F.Supp. 2d 1101 (E.D. Cal. 2006)………………………………………......10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)………………………………………………………………...15

*Perry v. Thomas*,
482 U.S. 483 (1987)…………………………………………………………………5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967)………………………………………………………………..14

*Shroyer v. New Cingular Wireless Servs.*,
498 F.3d 976 (9th Cir. 2007)………………………………………………………..22

*Stagner v. Luxxotica Retail North America, Inc.*,
2011 WL 3667502 (N.D.Cal.)……………………………………………….14, 15

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
130 S.Ct. 1758 (2010)……………………………………………………………16

*Ticknor v. Choice Hotels International, Inc.*,
265 F.3d 931 (9th Cir. 2001)…………………………………………………………6

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003), *cert. denied*, 124 S. Ct. 53…………………………......6

*United Steelworkers of America v. Warrior Gulf Nav. Co.*,
363 U.S. 574 (1960)…………………………………………………………………5

*Volt Information Services, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989)………………………………………………………………...14

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
25 Cal.App.3d 987 (1972)……………………………………………………….6, 11

*Zarandi v. Alliance Data Sys. Corp.*,
No CV 10-8309 (DSF) (JCGx) 2011 WL 1827228 (C.D. Cal. May 9, 2011)…………...20



Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

*Zinser v. Accufix Research Institute, Inc.*,
253 F. 3d 1180 (9th Cir. 2001)……………………………………………………………6

**State Cases**

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
24 Cal.4th 83, 114 (2000)………………………………………………………..........24

*Broughton v. Cigna Healthplans of Calif.,*
21 Cal.4th 1066 (1999)…………………………………………………...3, 18, 19, 20

*Brown v. Ralph's Grocery Company*,
197 Cal.App.4th 489 (2011)……………………………………………...19, 20, 21

*Banner Entertainment, Inc. v. Superior Court*, (Alchemy Filmworks, Inc.),
62 Cal.App.4th 348 (1998)…………...………………………………………………...7

*Corey v. Golden State Bank*,
95 Cal.App.3d 360 (1979)………………………………………………………11, 12, 13

*Cruz v. PacifiCare Health Systems, Inc.,*
30 Cal.4th 303 (2003)…………………………………………………........3, 19, 20, 21

*Engalla v. Permanente Med. Group, Inc.*,
15 Cal.4th 951 (1997)………………………………………………………………...6

*Flores v. Transamerica HomeFirst, Inc.*,
93 Cal.App.4th 846 (2001)……………………………………………………………24

*Healy Tibbits Constr. Co. v. Employers' Surplus Lines Ins. Co.*, 7
2 Cal.App.3d 741 (1977)……………………………………………………………...13

*Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*,
89 Cal.App. 4th 1042 (2001)…………………………………………………………10, 12

*NAACP of Camden East v. Foulke Management Corp.*,
421 N.J. Super. 404 (2011)……...…………………………………………2, 14, 16, 22

*Nat'l Supermarkets Assoc. v. Am. Express Travel Related Servs. Co.* (In re Am. Express Merchants' Litig.),
634 F.3d 187 (2d Cir. 2011) (American Express II)………………………………2, 16, 17

*Neal v. State Farm Ins. Companies*,
188 Cal.App.2d 690 (1961)……………………………………………………………...12

*Richmond v. Dart Industries, Inc.,*
29 Cal.3d 462 (1981)…………………………………………………………………22



Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

*Rosenthal v. Great Western Financial Securities Corporation,*
14 Cal.4th 394 (1996)……………………………………………………………………..6

*Sav-On Drug Stores, Inc. v. Superior Court,*
34 Cal.4th 319 (2004)……………………………………………………………………22

*Stirlen v. Supercuts, Inc.,*
51 Cal.App. 4th 1519 (1997)……………………………………………………………..23

*Szetela v. Discover Bank*,
97 Cal.App.4th 1094 (2002)……………………………………………………...……24

*Washington Mutual Bank v. Superior Court,*
24 Cal.4th 906 (2001)…………………………………………………………………...6

**Statutes**

47 U.S.C. § 227, et seq……………………………………………………………………passim

9 U.S.C. § 2……………………………………………………………………………………1, 2, 14

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

## I. INTRODUCTION

In November 2011, Plaintiff Erik Knutson ("Plaintiff") purchased a Toyota Tacoma truck which, for marketing purposes, included a free three month trial subscription to Sirius XM Radio. Complaint, ¶ 9. As part of Defendant Sirius XM Radio, Inc.'s ("Sirius" or "Defendant") marketing tactics, on three separate occasions, Defendant contacted Plaintiff on Plaintiff's cellular telephone via an Automatic Telephone Dialing System ("ATDS") using an artificial or prerecorded voice. *Id.* at ¶¶ 14, 15, 19. At no time had Plaintiff ever provided his cellular telephone number to Sirius or provided any prior express consent to receive such telephone calls from Sirius. *Id.* at 10. Therefore, Plaintiff brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") against Sirius for its practice of initiating unsolicited, and also unwanted, telephone calls via an ATDS to cell phones, including Plaintiff's cell phone. Plaintiff seeks not only statutory damages, but also injunctive relief under the TCPA, as permitted by the statute.

The TCPA prohibits anyone from calling persons on their cellular telephone with an autodialer or by a prerecorded voice message without that person's prior express consent. The TCPA imposes statutory damages of $500 for each such call that was made negligently and $1,500 for each such call that was made willfully. Because of the sheer numbers of calls involved in customary marketing procedures and methods, such practices often result in tens of millions of dollars in liability on a class-wide basis. With this motion seeking to compel Plaintiff to arbitrate this case on an individual basis, Sirius attempts to cut off all liability for the likely substantial class-wide statutory damages under the TCPA for the calls it made. Instead of defending perhaps a multi-million dollar class action, Sirius seeks to limit this case to arbitrating whether and how many telephone calls were made only to Plaintiff's cellular telephone, resulting in an individual judgment of perhaps several thousand dollars.

Sirius argues there are essentially no more defenses to the enforcement of arbitration agreements after the U.S. Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (Apr. 27, 2011) ("*AT&T Mobility*"). However, such an argument is simply not true because as that case made clear, the saving clause of the Federal Arbitration Act ("FAA") 9 U.S.C. Section 2, requires arbitration agreements to be held unenforceable "upon such grounds

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

as exist at law or in equity for the revocation of any contract." *AT&T Mobility*, 131 S. Ct. at 1746. In addition, *AT&T Mobility* was concerned with impediments to the goal of the FAA: embracing arbitration and encouraging its enforcement, if the parties agreed to it. The Supreme Court made it clear that California's state law rules stood in the way of arbitration agreements and put an end to the *Discover Bank* rule and its progeny which found class waivers in consumer arbitration agreements to be unconscionable if certain elements were found. *Id.* at 1753. However, *AT&T Mobility* did *not* do away with defenses to the enforcement of arbitration agreements, including the grounds in equity or at law relating to the revocation of any contract, including fraud, mistake, lack of consent, unconscionability, or other defenses recognized to void or rescind contracts in general. Instead, the Court reconfirmed their validity as defenses to enforcement: This saving clause of Section 2 permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, . . .'". *AT&T Mobility*, 131 U.S. at 1746.

Thus, the arbitration clause contained in the Customer Agreement should not be enforced for a number of reasons. First, there is no evidence that Plaintiff ever agreed to the proffered arbitration clause; there was no mutual assent as required under California law to form a contract. The evidence produced here by Plaintiff shows there is insufficient proof that an arbitration clause was ever agreed upon or put in place between the parties under state law contract rules.

Second, to enforce the arbitration clause and prevent Plaintiff from the ability to pursue his rights on a classwide basis would deny Plaintiff his statutory rights under the TCPA. Other federal courts in cases relying on federal arbitration law have refused to enforce arbitration clauses when to do so meant the parties would effectively be denied a statutory remedy. *See Nat'l Supermarkets Assoc. v. Am. Express Travel Related Servs. Co.* (In re Am. Express Merchants' Litig.), 634 F.3d 187, 199 (2d Cir. 2011) (American Express II); *Kristian v. Comcast*, 446 F.3d 25 (1st Cir. 2006); *NAACP of Camden East v. Foulke Management Corp.*, 421 N.J. Super. 404 (2011). If the arbitration clause is enforced here, the same result would occur. It is highly unlikely that Plaintiff or anyone else could spend the funds necessary for attorney's fees to arbitrate the TCPA claim alleged here. The TCPA statutory damages are

$500 for each negligent violation and $1,500 for each willful violation. Plaintiff cannot be expected to pay many thousands of dollars in attorney's fees to arbitrate his individual claim, which is what the evidence Plaintiff submits shows a local attorney would charge to pursue such a claim in arbitration. Rooney Decl. in Support of Opposition to Defendant's Motion, ¶¶ 6, 7. Thus, the cost of hiring an attorney to pursue an individual claim is prohibitive, and effectively prevents Plaintiff from vindicating his statutory rights under the TCPA. As such, under the federal law on arbitrability, the arbitration agreement must be not enforced.

In addition, Plaintiff seeks not only monetary damages under the TCPA, but also injunctive relief as specifically permitted by that statute. Complaint, ¶ 40. 47 U.S.C. § 227(b)(3)(A) states that "A person or entity may, *if otherwise permitted by the laws or rules of court of a State*, bring in an appropriate court of that State an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation." (emphasis added). As a result, under California law, such injunctive relief sought not as a private right but as a right to benefit the public is not arbitrable. *Broughton v. Cigna Healthplans of Calif.,* 21 Cal.4th 1066 (1999); *Cruz v. PacifiCare Health Systems, Inc.,* 30 Cal.4th 303 (2003). Therefore, at a minimum, that portion of the case must be heard by this Court.

Lastly, the Customer Agreement drafted by Sirius, by virtue of its terms limiting the time for Plaintiff to object to the agreement to three business days after the activation of Plaintiff's receiver, and Defendant failing to provide Plaintiff with the agreement until over one month after the activation of Plaintiff's receiver, is an unconscionable adhesion contract that is unenforceable.

Plaintiff therefore submits Defendant's motion should be summarily denied.

## II. STATEMENT OF FACTS

As set forth in Plaintiff's Complaint and the Declaration of Erik Knutson in Opposition to Defendant's Motion to Compel Arbitration ("Knutson Decl."), on November 2011, Plaintiff purchased a Toyota Tacoma truck which, for marketing purposes, included a free three month trial subscription to Sirius XM Radio. Knutson Decl., ¶ 4, Complaint, ¶ 9. Plaintiff's receiver

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

was activated in November 2011 after Plaintiff purchased his Toyota Tacoma Truck. Knutson Decl*.,* ¶ 5, Ruhland Decl. in Support of Defendant's Motion, ¶ 7. After the activation of Plaintiff's receiver, as part of Sirius' marketing tactics, on three separate occasions, Defendant contacted Plaintiff on Plaintiff's cellular telephone via an ATDS using an artificial or prerecorded voice. Complaint, ¶¶ 13, 15, 19. At no time had Plaintiff ever provided his cellular telephone number to Sirius or provided any prior express consent to receive such telephone calls from Sirius. *Id.* at ¶ 10. Plaintiff at no time entered into a business relationship with Sirius nor did Plaintiff ever sign a contract with Sirius. *Id.* at ¶ 11, Knutson Decl., ¶ 4.

Sirius' Customer Agreement contains a clause, which states that if the customer does not cancel his subscription within three business days of the activation of his receiver, it will mean that the customer agrees to the agreement and it will be legally binding on him. Ex. A to Ruhland Decl. in Support of Defendant's Motion. Plaintiff did not receive any documentation from Sirius until mid December 2011 when he received a Welcome Kit in the mail from Sirius, which included the Customer Agreement. Knutson Decl., ¶ 6, Ruhland Decl. in Support of Defendant's Motion, ¶¶ 10, 11. By the time Plaintiff was provided with the Welcome Kit by Sirius, Plaintiff's receiver had already been activated for over one month. Knutson Decl., ¶ 6, Ruhland Decl. in Support of Defendant's Motion, ¶¶ 7, 10, 11. Thus, Plaintiff was not shown or provided with the opportunity to read or understand the clause in the Customer Agreement requiring arbitration of disputes and giving up Plaintiff's rights to go to court until over one month after he had forfeited his right to do so. Knutson Decl., ¶¶ 5, 6, 7, Ruhland Decl. in Support of Defendant's Motion, ¶¶ 7, 10, 11. Plaintiff did not understand that by continuing to use the Sirius satellite radio service, Defendant would deem that he had accepted all of the terms of the Customer Agreement, including the arbitration clause. *Id.*, ¶ 6. Plaintiff never agreed to arbitration. *Id.*, ¶¶ 9, 10. Once Plaintiff was finally provided with the Customer Agreement, Plaintiff was not directed to the importance of the Customer Agreement by Sirius, nor was he instructed to read it. *Id.*, ¶¶ 6, 7. The arbitration clause is not placed on the first page of the Customer Agreement, nor is it highlighted in any way. Instead, the Customer Agreement has the arbitration clause placed on page six of the nine page document. Ex. A to Ruhland Decl. in Support of Defendant's Motion.

Plaintiff cannot afford to pay the attorney's fees to arbitrate his claim on an individual basis, based upon his understanding that it could cost perhaps tens of thousands of dollars to do so. *Id*. at ¶ 11, Rooney Decl. in Support of Opposition to Defendant's Motion, ¶¶ 6, 7. Furthermore, the amount of recovery possible at $500 to $1,500 per violation would be much less than the attorney's fees it would cost, and he cannot recover attorney's fees with a TCPA claim. Knutson Decl., ¶ 11, Rooney Decl. in Support of Opposition to Defendant's Motion, ¶ 6, 7. Plaintiff seeks not only statutory damages, but also injunctive relief under the TCPA, as permitted by the statute. Complaint, ¶ 40.

## III. ARGUMENT

### A. ARBITRATION CANNOT BE COMPELLED UNDER THE FAA GIVEN THAT DUE TO THE LACK OF MUTUAL ASSENT TO THE TERMS OF THE PURPORTED CONTRACT, THERE IS NO VALID AND ENFORCEABLE AGREEMENT BETWEEN THE PARTIES TO ARBITRATE

In determining whether to compel arbitration under the FAA, the court must determine whether: (1) there is an agreement between the parties to arbitrate; (2) the claims at issue fall within the scope of the agreement; and (3) the agreement is valid and enforceable. *Lifescan, Inc. v. Pernaier Diabetic Services, Inc.,* 363 F.3d 1010, 1012 (2004). Here there is no valid agreement between the parties and the agreement is not enforceable.

As the Court so aptly stated in *Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165, 1179 (9th Cir. 2003): "The United States Supreme Court has held that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' *United Steelworkers of America v. Warrior Gulf Nav. Co*., 363 U.S. 574, 582, (1960)." Basic contract law principles relating to the formation of contracts are applied to determine the existence of a contract. *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). In discussing the role of state law in federal arbitration analysis, the court in *Perry v. Thomas,* 482 U.S. 483, 492 (1987) stated, "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Thus, the Court must review the contract according to the principles of the state of California because Plaintiff resides here, it is the forum state, and

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

it is where the Customer Agreement was *allegedly* entered into between the parties.[1]

Sirius contends that the FAA compels arbitration here. Def's Memo at 5-6. However, the FAA contemplates that this Court will consider, in the first instance, whether the arbitration agreement is valid under California state law. While there is a liberal federal policy favoring arbitration agreements, the court must still look to *state* law to address issues concerning the validity and enforceability of contracts. *Ticknor v. Choice Hotels International, Inc.,* 265 F.3d 931, 936-937 (9th Cir. 2001); *Ting v. AT&T,* 319 F.3d 1126 (9th Cir. 2003), *cert. denied*, 124 S. Ct. 53. The court's role under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Chiron Corporation v. Ortho Diagnostics Systems, Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). The policy issues favoring arbitration discussed in Defendant's brief do not apply *without first finding a valid agreement to arbitrate*.

Because the existence of an agreement is a statutory prerequisite to granting a petition to compel arbitration, the Defendant here bears the burden of proving the existence of an agreement by a preponderance of the evidence. *Rosenthal v. Great Western Financial Securities Corporation,* 14 Cal.4th 394, 413 (1996); *Engalla v. Permanente Med. Group, Inc*., 15 Cal.4th 951, 972 (1997).

### 1. **Sirius' Failure to Provide Plaintiff With the Customer Agreement Until After the Deadline for Plaintiff to Reject the Terms of the Contract Had Expired Precludes Any Finding of Mutual Assent to the Terms of the Purported Contract**

For any arbitration agreement to be binding on Plaintiff, Defendant must show a clear

---

[1] Plaintiff anticipates that Defendant may attempt to argue in its Reply brief that the interpretation and enforcement of the Customer Agreement should be governed by the rules and regulations of the State of New York and other applicable federal laws. Ex. A to Ruhland Decl. in Support of Defendant's Motion. However, a federal court sitting in diversity must look to the law of the forum state to determine what law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020 (1941); *Ticknor v. Choice Hotels International, Inc.,* (9th Cir. 2001) 265 F.3d 931, 936-937. The court in *In Re Pizza Time Theater Sec. Lit.,* 112 F.R.D. 15, 19 (N.D. Cal. 1986) stated, "'California will decline to apply its own law to a case brought in California only if it is shown that another state has a greater interest in having its own law applied' [quoting from] *Nelson v. Tiffany Industries, Inc*., 778 F.2d 533, 534 (9th Cir. 1985)." That analysis was also confirmed in *Washington Mutual Bank v. Superior Court,* 24 Cal.4th 906 (2001). In addition, because Defendant is attempting to impose a law other than that of the forum state, *it bears the burden of proof* that the other state's law applies. *Zinser v. Accufix Research Institute, Inc.,* 253 F. 3d 1180, 1187 (9th Cir. 2001). Should Defendant raise this issue in its reply brief, it should not be considered by the Court as it would violate Plaintiff's right of Due Process by not allowing Plaintiff an opportunity to respond to this argument.

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

mutual manifestation of assent. *Windsor Mills, Inc. v. Collins & Aikman Corp*., 25 Cal.App.3d 987 (1972). "California law is clear that there is no contract until there has been a meeting of the minds on *all* material points." *Banner Entertainment, Inc. v. Superior Court*, (Alchemy Filmworks, Inc.) 62 Cal.App.4th 348, 357-358 (1998). "Thus, the failure to reach a meeting of the minds on all material points prevents the formation of a contract *even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract."* *Id.* at 359. This mutual assent principle is not limited to a non-commercial or consumer contract, as is a Consumer Legal Remedies Act non-waiver provision. As such, it is a law of general applicability and therefore not preempted by the FAA. *See Boyer v. AT&T Mobility*, 2011 WL 3047666 (S.D. Cal., July 25, 2011); *Ting v. A.T. & T*, 319 F.3d 1126 (9th Cir. 2003).

As testified to in the Declaration of Elizabeth Ruhland submitted in support of Defendant's Motion, Plaintiff's account with Sirius was activated on November 7, 2011 for a 90-day trial ending February 7, 2012. Ruhland Decl. in Support of Defendant's Motion, ¶ 7. The Declaration of Elizabeth Ruhland further states that Sirius did not mail Plaintiff the Welcome Kit which included the Customer Agreement until November 29, 2011. *Id.* at ¶ 10. Said Welcome Kit was last scanned for delivery by the USPS on Saturday December 10, 2011 and had an estimated delivery date of Monday December 12, 2011 or Tuesday December 13, 2011. *Id.* Thus, Sirius did not provide Plaintiff with the Customer Agreement which forms the basis of Sirius' claim that the present action is subject to arbitration until either December 12, 2011 or December 13, 2011; *over one month after Plaintiff's account with Sirius had been activated*. By the time that Plaintiff received the Customer Agreement, over one-third of Plaintiff's service term had already passed. The Customer Agreement attached as Ex. A to the Declaration of Elizabeth Ruhland in support of Defendant's Motion states in part:

> IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SUBSCRIPTION. *IF YOU DO NOT CANCEL YOUR SUBSCRIPTION WITHIN 3 BUSINESS DAYS OF ACTIVATION OF YOUR RECEIVER, IT WILL MEAN THAT YOU AGREE TO THIS AGREEMENT WHICH WILL BE LEGALLY BINDING ON YOU.*
>
> (emphasis added).

This language clearly indicates that Plaintiff only had until *three business days after activation of his receiver* to notify Sirius of his refusal to accept the terms of The Customer

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

Agreement. As explained above, Plaintiff was not even provided with the Customer Agreement until either December 12, 2011 or December 13, 2011, over one month after Plaintiff's activation of his receiver. By limiting the timeframe for Plaintiff to object to the terms of the Customer Agreement to three business days after the activation of Plaintiff's receiver and then failing to provide Plaintiff with a copy of the Customer Agreement until over one month after Plaintiff activated his receiver, Sirius precluded Plaintiff from the opportunity to accept or reject the terms contained in the Customer Agreement, which included the arbitration clause that is the subject of Defendant's Motion. By the time Plaintiff finally was provided with the Customer Agreement, Plaintiff had forfeited any right to accept or reject the terms of the Customer Agreement. Sirius, who strategically chose to wait until after Plaintiff had forfeited his right to object to the terms of the Customer Agreement to provide Plaintiff with a copy of the Customer Agreement cannot now hold Plaintiff to the terms of an agreement that Plaintiff had no choice in accepting or rejecting. Plaintiff clearly did not assent to the terms of the Customer Agreement given that the very terms of said agreement, taken together with Sirius' conduct, precluded Plaintiff from being able to do so. The cases relied upon by Sirius in support of the proposition that Plaintiff is bound by the terms of the Customer Agreement even though it was not provided to Plaintiff until after Plaintiff activated his service are all distinguishable from the present case.

The court in *Bischoff v. DirecTV, Inc.,* 180 F.Supp.2d 1097, 1103, 1105 (2002), held that the plaintiff in that case was bound by the arbitration clause of the Customer Agreement even though the Customer Agreement was not provided to the plaintiff until after the parties had entered into their agreement for satellite programming, after plaintiff had purchased the DirecTV equipment, and after the plaintiff had activated the service. However, the language contained in DirecTV's Customer Agreement actually allowed for the plaintiff in that case to reject the terms of the agreement if they did not accept them. The Customer Agreement in *Bischoff* stated in relevant part: "'This document describes the terms and conditions regarding your receipt and payment of DirecTV service. If you do not accept these terms, please notify us immediately and we will cancel your service. If you agree, it will mean that you accept these terms and, accordingly, they will be legally binding on you.' Customer Agreement at 1." *Id.* at

1101. Unlike Sirius' Customer Agreement which included a three business day period in which to reject the terms of the Customer Agreement after the activation of Plaintiff's receiver, which had long expired by the time it was provided to Plaintiff, the Customer Agreement in *Bischoff* has no hard-and-fast deadline for rejecting its terms. In not holding the plaintiff to a specific deadline in which to reject the terms of the Customer Agreement, the plaintiff in *Bischoff* was actually provided with an opportunity to accept or reject the terms of the Customer Agreement. Sirius may attempt to liken Sirius' Customer Agreement to the Customer Agreement in *Bischoff* through the following language in Sirius' Customer Agreement: "IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SUBSCRIPTION." However, the fact that this sentence is immediately followed by the sentence stating that if Plaintiff fails to cancel his subscription within three business days from the date of the activation of his receiver, Plaintiff will have agreed to the terms of the agreement, renders this sentence completely meaningless in Plaintiff's situation. The present case is clearly distinguishable from *Bischoff* given that unlike DirecTV, Sirius deprived Plaintiff of any opportunity to accept or reject the terms of the Customer Agreement by including a three business day deadline from the date Plaintiff's receiver was activated and then strategically waiting over one month after the date said deadline expired before even providing Plaintiff with the Customer Agreement.

The case of *Lozano v. AT&T Wireless*, 216 F. Supp.2d 1071 (2002) also cited in Defendant's motion is distinguishable from our case on the same grounds. The court in *Lozano* held that a customer agreement contained within the box of a newly purchased phone which is provided to the purchaser after the contract for service has been signed is enforceable. *Id.* at 1073. However, in coming to this holding, the court recognized that by virtue of the customer agreement being located inside of the box of the purchased phone, the customer had the option of immediately cancelling the contract if the terms and conditions were not agreeable or canceling the contract within 30 days of activation. *Id.* at 1073, 1075. As explained above, Plaintiff was not provided with the opportunity to reject the terms of Sirius' Customer Agreement given that the proscribed three business day timeframe in which to do so had already expired over one month prior to Sirius providing Plaintiff with the Customer Agreement. As

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

such, the facts surrounding the customer agreement in *Lozano* fundamentally differ from those in Sirius' Customer Agreement.

As Defendant's Motion so appropriately points out, the court in *Meridian Project Systems, Inc. v. Hardin Const. Co., LLC*, 426 F.Supp. 2d 1101, 1107 (E.D. Cal. 2006), held that "a 'shrinkwrap' end-use license agreement formed an enforceable contract, even thought [sic] the buyer did not see it before purchasing software, *where the agreement provided the buyer with the right to return the software* if it did not agree to the license terms." Def's Memo at 4, (emphasis added). Unlike Sirius' Customer Agreement, the End User License Agreement in *Meridian Project Systems, Inc*. provided the consumer with the opportunity to return the product if they did not agree to the terms of the agreement. *Id.* Thus, the facts on which the holding in *Meridian Project Systems, Inc*. is based are clearly distinguishable from those surrounding the present case.

As a result of Sirius' failure to provide Plaintiff with the Customer Agreement until after the time period prescribed in said agreement for Plaintiff to accept or reject it had expired, Plaintiff was never even provided with an opportunity to assent to the terms of the Customer Agreement. Through the terms of the Customer Agreement and Sirius' conduct, Sirius bound Plaintiff to the terms of the agreement before Plaintiff was even provided an opportunity to see the agreement. As such, the Customer Agreement is not a valid and enforceable contract. It follows that the arbitration agreement contained within the Customer Agreement is not enforceable.

**2. <u>There Was No Mutual Assent to the Arbitration Clause of the Customer Agreement Given That Plaintiff's Failure to Read Said Clause Was Due To The Arbitration Clause's Inconspicuous Nature</u>**

There is a recognized exception in the law for failing to read a contract "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient." *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*, 89 Cal.App. 4th 1042, 1049-1050 (2001).

Plaintiff did not receive any documentation from Sirius until mid December 2011 when he received a Welcome Kit in the mail; at which point over one-third of Plaintiff's free trial

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

subscription had passed. Knutson Decl., ¶¶ 5, 6, Ruhland Decl. in support of Defendant's Motion to Compel, ¶¶ 7, 10, 11. This Welcome Kit, among other documents, included the Customer Agreement upon which Sirius' Motion is based. Sirius' extreme delay in providing Plaintiff with the Customer Agreement caused Plaintiff to believe that any terms governing his relationship with Sirius would have already been made known to Plaintiff. Sirius intentionally lulled Plaintiff into a sense of complicity with respect to the terms of their service in order to surreptitiously bind Plaintiff to contract terms disproportionately favorable to Sirius. Not only should Plaintiff not be bound to the arbitration clause of the Customer Agreement because of Sirius' extreme delay in providing the agreement to Plaintiff, but also because of the manner in which the arbitration clause itself was presented in the agreement.

In *Windsor Mills, Inc.*, 25 Cal.App.3d at 989-990, an arbitration clause was included in an "Acknowledgement of Order" form, buried in the many paragraphs of fine print. The court refused to find that the party opposing the arbitration assented to the purported agreement, stating, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 993. The court went on to state that, "This principle of knowing consent applies with particular force to provisions for arbitration." *Id.* In coming to its holding that there was no binding agreement to arbitrate, the court in *Windsor Mills, Inc.* relied on the fact that the arbitration provision was inconspicuous and the plaintiff did not learn of the arbitration provision until after the defendant made a demand for arbitration. *Id.* at 996. Similarly, in coming to the holding that customers of a bank did not consent to the terms of the bank's money orders which contained a service charge provision, the court in *Corey v. Golden State Bank*, 95 Cal.App.3d 360, 367 (1979) relied on the facts that the service charge provision was effectively hidden from the view of money order purchasers until after the transactions were complete, the size of the print setting forth the service charge provision was small, and the bank's agents did not as a rule call the provision to the customer's attention. *Id.* at 367.

Similar to the plaintiffs in *Windsor Mills, Inc.* and *Corey*, Plaintiff here was not aware of the "inconspicuous contractual provisions" "whose contractual nature is not obvious" and buried in the middle of the Customer Agreement which was not even provided to Plaintiff until

over one month after Plaintiff had unknowingly waived his right to reject the terms of the agreement. The arbitration clause itself is found on page six of nine of the Custer Agreement. Ex. A to Ruhland Decl. in Support of Defendant's Motion. While the paragraph stating that any dispute may be resolved by binding arbitration is in capital letters, it fails to stand out from the rest of the text on the page given that there are a total of five paragraphs in all capital letters on the same page and other paragraphs on the same page are in bold font. Further, the entire Customer Agreement is in such small font that one would have to closely examine every paragraph of the entire nine page document in order to ascertain any important provisions. Plaintiff's failure to read the Customer Agreement is excused under *Marin Storage* and *Corey* because the agreement did "not appear to be a contract" and Sirius failed to direct "the attention of the recipient" to the arbitration clause. Here, the Customer Agreement was sent over one month after Plaintiff's receiver was activated. When Plaintiff finally received the Customer Agreement included in the Welcome Kit, it did not appear to be a contract. It is very possible a layman would believe a contract is something a person signs prior to services being rendered and is therefore bound by. Here, Plaintiff did not sign the Customer Agreement which was sent in the mail over one month after Sirius had begun providing satellite radio to Plaintiff. A nine page document that later was sent by Sirius in the mail cannot be construed by a layman as a contract.

Furthermore, the Customer Agreement is a contract of adhesion and any ambiguous terms contained therein must be construed against Sirius, the party responsible for drafting it. A contract of adhesion "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm Ins. Companies*, 188 Cal.App.2d 690, 694 (1961). The court in *Bischoff* held that the Customer Agreement signed by the plaintiff in that case was a contract of adhesion as it was a form contract imposed by the party with superior bargaining power and the plaintiff could not negotiate the terms, but could only take them or leave them. *Bischoff*, 180 F.Supp.2d at 1107. Similarly, Sirius' Customer Agreement, which Sirius itself drafted, is clearly a contact of adhesion given that the only option provided to the other contracting party is to accept or reject it in its entirety. In cases involving uncertainty

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

regarding the terms of a contract, the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist. *Healy Tibbits Constr. Co. v. Employers' Surplus Lines Ins. Co.*, 72 Cal.App.3d 741, 749 (1977). The court in *Healy Tibbits Constr. Co.,* in discussing ambiguous terms in an insurance contract, stated that, "It is, of course, axiomatic that where the language of the insurance policy is ambiguous or susceptible of two different constructions, it will be strictly construed against the insurer and that construction adopted which is most favorable to the insured." *Id.* at 751. The court's justification behind this principle was that an insurance contract is a contract of adhesion, which involves unequal bargaining strength between the parties involved. *Id.* at 752. Thus, any ambiguity associated with the terms of the Sirius' Customer Agreement should be construed in Plaintiff's favor given that Sirius was the party who drafted the agreement and had unequal bargaining power over Plaintiff.

Defendant claims that Plaintiff consented to the arbitration clause simply because he continued to use Sirius' satellite radio service. Def's Memo at 3-4. However, there needs to be more in order for Defendant to meet its burden of proof that the parties assented to such an important contract clause as the arbitration clause. As with the plaintiffs in *Corey,* Plaintiff never saw the arbitration clause nor was it ever pointed out to him by Defendant. It is undisputed that the purported arbitration agreement is not in any document signed by Plaintiff but instead only exists in a separate Customer Agreement sent to Plaintiff *after* he had already been receiving Sirius' services for over one month. Ruhland Decl. in Support of Defendant's Motion, ¶¶ 7, 10, 11, 13, Ex. A. Plaintiff never assented to those terms, regardless of Defendant's self-serving claim that by continuing to use the satellite radio service without objection, Plaintiff is deemed to have agreed to all of the terms. As Defendant testifies, the only way that the arbitration clause was provided to Plaintiff was after the fact; it was mailed to him well *after* Sirius began providing Plaintiff with its satellite radio service. Ruhland Decl. in Support of Defendant's Motion, ¶¶ 7, 10, 11, 13.

Due to the lack of mutual assent of the alleged parties to the arbitration clause, *AT&T Mobility* cannot compel arbitration here. To the contrary, Justice Thomas in his concurring opinion as part of the 5-4 majority confirmed in *AT&T Mobility* that *mutual assent* is required

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

before an arbitration clause can be enforced. *AT&T Mobility* at 1755. He explained that the FAA's Section 2's statement excluding only those contracts from FAA enforcement which should be revoked in law or equity, should be read in context with Section 4. Read together, Justice Thomas holds that Section 2's "grounds . . . for the revocation" of the agreement "would mean grounds related to *the making of the agreement*." *AT&T Mobility* at 1754-55 (emphasis added). He held "[t]his would require enforcement of an agreement to arbitrate unless a party successfully asserts a defense concerning the formation of the agreement to arbitrate, such as fraud, duress, or mutual mistake," citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 403-404, 87 S.Ct. 1801 (1967). Justice Thomas reaffirmed in FN*, p. 1755, that "[c]ontract formation is based upon the consent of the parties, and we have emphasized that '[a]rbitration under the Act is a matter of consent'," citing *Volt Information Services, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

In the present case, there was simply no mutual assent to have disputes arbitrated, therefore, there is no arbitration agreement to enforce pursuant to *AT&T Mobility*. Similarly, in *NAACP of Camden County East*, the New Jersey Court of Appeal, in a lengthy and carefully reasoned opinion, refused to enforce an arbitration agreement, relying in large part upon Justice Thomas' ruling in the concurring opinion of *AT&T Mobility* about the necessity of mutual assent. In *NAACP*, the court found there were several versions of the arbitration agreements proffered, all claimed to be part of a package of arbitration agreements. Despite plaintiff having signed certain documents containing arbitration clauses, and despite an admonition about arbitration above her signature, the court found no arbitration agreement existed because of the "many inconsistencies and unclear passages" in the arbitration agreements, and found the arbitration agreements "unenforceable for lack of mutual assent". *NAACP of Camden County East*, 421 N.J. Super. at 438.

The same occurred in *Stagner v. Luxxotica Retail North America, Inc*., 2011 WL 3667502 (N.D.Cal.), a post-*AT&T Mobility* case, wherein the Court found there was *no agreement* to arbitrate and no assent was intended because the plaintiff had signed only one of two agreements, even though both signature lines were on the same page and, as argued by Defendant, duplicative. *Id*. at *2. Plaintiff had submitted a declaration that she had not intended

to agree to any arbitration agreement. *Id*. at *4. The Court cited to *AT&T Mobility* to enforce the principle that it is the parties' intent that is supposed to control in arbitration clauses: "Arbitration is a matter of contract, and the FAA requires courts to honors parties' expectations. *Concepcion,* 131 S. Ct. 1752 (citation omitted.)" *Stagner*, at *3.

Similarly here, Plaintiff did not sign the arbitration clause or any other agreement containing such a clause, was not informed of the arbitration clause in the Customer Agreement, and did not have it pointed out to him, nor was he informed of its content or its importance. Like in *Stagner*, just going through the motions here is not enough. The Defendant, whose burden it is to prove the existence of a valid contract, cannot claim that Plaintiff ever manifested his consent to the arbitration clause. Sending an arbitration agreement buried in the middle of nine pages of the Customer Agreement without informing the consumer about its importance, or even that it was to be considered a contract, does not come close to establishing mutual assent of the parties to the agreement. It only shows one party unilaterally deemed that the other party would be bound simply because the first party said so. Perhaps these "after the fact imposition of an arbitration clause" procedures Defendant uses allows more consumers to be processed for satellite radio service and allows Defendant to be more expedient in its business, but that should not permit Sirius to argue that this Court should ignore long standing principles of contract formation by taking the position it does here. There was simply no contract.

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

**B. PLAINTIFF WILL NOT BE ABLE TO VINDICATE HIS STATUTORY RIGHTS UNDER THE TCPA STATUTE IF HE IS ORDERED TO ARBITRATION**

Even if an arbitration agreement is found to exist, that agreement cannot void a person's rights in arbitration. As the Supreme Court made clear in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991): "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum," citing to *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Both of these cases are still good law and in fact were relied upon in *AT&T Mobility*. Thus, while the Court in *Gilmer* affirmed that statutory rights can be resolved through arbitration, the decision also recognized that the arbitral forum *must* allow the employee to adequately pursue statutory rights.

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

Enforcing the arbitration clause and precluding a class action by Plaintiff here would deny Plaintiff his statutory rights to seek damages under the TCPA. When the enforcement of an arbitration clause would result in denying a statutory remedy, other federal courts have refused to enforce arbitration clauses. *See Nat'l Supermarkets Assoc. v. Am. Express Travel Related Servs. Co.* (In re Am. Express Merchants' Litig.), 634 F.3d 187, 199 (2d Cir. 2011) (American Express II); *Kristian v. Comcast Corp.,* 446 F.3d 25 (1st Cir. 2006); *NAACP of Camden East v. Foulke Management Corp.*, 421 N.J. Super. 404 (2011).

In the *American Express II* case, the plaintiffs were a group of merchants that had contracted with American Express to accept their credit cards. The agreement had a contract with an arbitration clause containing a class action prohibition. The U.S. Supreme Court ordered the 2nd Circuit Court of Appeal to vacate their prior decision that refused to enforce the arbitration clause and decide the case again due to the intervening decision in *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.,* 130 S.Ct. 1758, 178 L.Ed. 2d 605 (2010). The 2nd Circuit did so in *American Express II*, decided just before *AT&T Mobility* was decided. The Court again reviewed their earlier decision and again the Court found that *Stolt-Nielsen* did not affect their analysis and again declined to enforce the arbitration clause. The Court found that sending the parties to arbitration in an antitrust case would effectively deny them a remedy because the cost of arbitrating those cases individually was prohibitive for any individual entity to pay. *Id*. at 198. In the prior case, the Court relied on the Supreme Court's analysis in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), finding that the cost of litigating an individual antitrust claim would be prohibitive and would effectively deny the plaintiffs any remedy. *Id.* at 191-192. In the recent decision, the Court made the same finding. They concluded that the evidence established that "the cost of plaintiffs' individually arbitrating their dispute with Amex would be prohibitive". *Id.* at 197. Importantly, as in *Kristian v. Comcast Corp*. discussed below, the Court explained that their analysis was not based upon state law unconscionability analysis, but instead based upon the federal law of arbitrability. *Id.* at 194. This is *not* a finding of unconscionability. They concluded "[t]hus, as the class action waiver in this case precludes plaintiffs from enforcing their statutory rights, we find the arbitration provision unenforceable." *Id.* at 199. They did not hold that arbitration agreements are per se

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

unenforceable, nor did they conclude all arbitration agreements in antitrust cases are unenforceable. *Id*. They only found that each case has to be decided on its own merits to make that determination. *Id.*

A similar result occurred in *Kristian v. Comcast Corp*., 446 F.3d 25 (1st Cir. 2006). There the Court did not refuse to enforce an arbitration agreement but instead severed the ban on class-wide arbitration because otherwise the plaintiffs would have been unable to vindicate their statutory rights. *Id.* at 52-53. The Court found that the plaintiffs would have been unable to arbitrate their individual claims because the cost of trying the antitrust claims was prohibitive for an individual. *Id.* at 55. The Court also found that the ban on attorney's fees would prevent plaintiffs from enforcing their rights and severed that clause. *Id*. at 54. As did the Court in *American Express II,* the *Kristian* Court relied upon the Supreme Court's decision in *Green Tree Financial Corp.-Alabama v. Randolph.* The court in the *Kristian* case found that showing prohibitive arbitration costs that prevent vindication of a statutory right is a valid defense to an arbitration clause. *Id.* at 52-53. Importantly, the Court did not use an unconscionability analysis but instead relied on the federal law of arbitrability's "vindication of substantive rights" analysis*. Id.* 60. The Court held that these are two different bodies of law, even though they are overlapping in their goals. The Court states that although "challenges to the enforceability of the arbitration agreements could be evaluated through the prism of state unconscionability law, we have chosen to apply a vindication of statutory rights analysis. . ." . *Id.* at 63.

Defendant will likely argue that this vindication of statutory rights analysis involving the idea of being unable to afford counsel was decided by *AT&T Mobility. See AT&T Mobility* at 1753. However, this vindication of rights analysis is based upon the federal law relating to arbitration (see *Kristian* analysis), not state law unconscionability. The law of arbitrability ignores the unconscionability analysis and does not impose prohibitions on entire categories of agreements. *Kristian, supra*. It is the California law of unconscionability that *AT&T Mobility* overruled, not the federal law on arbitrability.

If the arbitration clause is enforced here, the same barriers to vindication of statutory rights would occur. It is highly unlikely that Plaintiff or anyone else could spend the funds

necessary for attorney's fees to arbitrate the TCPA claim alleged here. The TCPA statutory damages are $500 for each negligent violation and $1,500 for each willful violation. Plaintiff cannot be expected to pay many thousands of dollars in attorney's fees to arbitrate his individual claim, which is what the evidence Plaintiff submits shows a local attorney would charge to pursue such a claim in arbitration. *See* Knutson Decl at ¶ 11; Rooney Decl. in Support of Opposition to Defendant's Motion, ¶¶ 6, 7 (estimating it would likely cost between $22,425 and $29,750 in attorney's fees to arbitrate an individual TCPA claim). Thus, the cost of hiring an attorney to pursue an individual claim is prohibitive, and effectively prevents Plaintiff from vindicating his statutory rights under the TCPA. As such, under the federal law on arbitrability, the arbitration clause of the Customer Agreement must be not enforced.

### C. PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF CANNOT BE ARBITRATED

Plaintiff's Complaint alleges conduct engaged in by Defendant alleged to be violative of the TCPA, and seeks not only damages but injunctive relief as well. Complaint, ¶ 40. The TCPA specifically allows such injunctive relief under that statute. 47 U.S.C. § 227(b)(3)(A), (C). The TCPA further allows for the pursuit of claims in a private attorney general capacity. 47 U.S.C. ¶ 227(g)(1). Defendant seeks to have all the claims in this case arbitrated, and in its request has not distinguished between the monetary damages claims and the injunctive relief claims. Further, Section I. 6. of Sirius' Customer Agreement states, "No Claim submitted to arbitration is heard by a jury or may be brought as a private attorney general." Ex. A to Ruhland Decl. in Support of Defendant's Motion.

Injunctive relief is in the nature of the remedy, for the benefit of the general public and not for the individual plaintiff. As a result, the courts have prevented the enforcement of a personal arbitration agreement regarding individual damages to also include review of a question affecting the public at large. Therefore, Defendant's request to arbitrate injunctive relief should be denied as the California courts have long held that injunctive relief is the province of the courts, not the arbitrator. Simply put, an arbitrator has no jurisdiction to impose nor supervise the enforcement of an injunction.

The California Supreme Court has held that claims for injunctive relief cannot be

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

arbitrated and there is nothing in the *AT&T Mobility* case that holds otherwise. *Broughton*, 21 Cal. 4th at 1066; *Cruz v. PacifiCare Health Systems, Inc.,* 30 Cal.4th 303 (2003). *Broughton* involved an alleged violation of the California Legal Remedies Act ("CLRA") in which the plaintiffs were acting as a private attorney general by seeking injunctive relief, on behalf of the general public, to put an end to the defendant's deceptive business practices. While holding that any damages issues had to be arbitrated, the Court found such injunctive relief outside the scope of the arbitration agreement, and found nothing in the FAA required such injunctive relief to be arbitrated. "We hold that under such circumstances . . . the Legislature did not intend this type of injunctive relief to be arbitrated." *Broughton*, 21 Cal. 4th at 1080. In *Cruz v. PacifiCare Health Systems, Inc.,* 30 Cal.4th 303 (2003), the Court confirmed its *Broughton* ruling, extending the principle to cases seeking injunctive relief under the Unfair Competition Law. In that case, plaintiff also sought injunctive relief to prevent further deceptive and unlawful business practices, benefitting not the plaintiff but instead the general public. The Court found such injunctive relief to also be outside the scope of arbitration, finding it "virtually indistinguishable" from the situation in *Broughton*. *Cruz*, 30 Cal. 4th at 315. *See also Klussman v. Cross Country Bank,* 134 Cal.App.4th 1283 (2005) (injunctive relief not arbitrable).

Here the TCPA statute allows for both statutory damages and for injunctive relief to prevent future TCPA violations. 47 U.S.C. § 227(b)(3)(A), (B) and (C). The injunction is to benefit the general public by preventing future wrongful conduct, i.e., placing ATDS telephone calls to persons without their consent. That is exactly the conduct found to be outside the scope of the arbitration agreements in *Broughton* and *Cruz*.

The FAA's focus is on the enforcement of arbitrating disputes between two private parties and does not prevent Plaintiff's ability to act as a private attorney general for the public good, the same purpose as litigating injunctive relief on behalf of the public. That was recently confirmed by the Second District Court of Appeal in *Brown v. Ralph's Grocery Company*, 197 Cal.App.4th 489 (2011). There the Court of Appeal held that *AT&T Mobility* and the FAA did not preempt state law regarding the unenforceability of a contractual waiver of the employee's right to pursue a representative action under the Private Attorney General Act of 2004 ("PAGA"). The Court refused to order arbitration of the PAGA claims despite the existence of

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

an arbitration clause, and despite *AT&T Mobility's* holding. The plaintiff in *Brown* argued that the waiver of participation in any representative action was unconscionable under California law. The Court did not have to get to the issue of whether class action waivers in employment contracts under California law are preempted by the FAA. However, the Court held the "AT&T does not provide that a public right, such as that created under PAGA, can be waived if such a waiver is contrary to state law." *Brown*, 197 Cal.App.4th at 500. The Court found that right is not waivable under state law, therefore it held that *AT&T Mobility* did not require arbitration of those claims. The Court relied on *Broughton* and *Cruz* in finding that injunctions that favor the public in general are beyond the scope of arbitration. *Brown*, 197 Cal.App.4th at 502-503. The *Brown* court cited the Supreme Court's analysis in both *Broughton* and *Cruz* finding that the monetary damages are private between the parties and are therefore arbitrable but the injunctive relief sought is to remedy a public wrong, and is therefore not arbitrable. *Id*. at 501. As the Court stated: "*Broughton* and *Cruz* dealt with arbitrability, not with class and representative action waivers." *Id.*

Furthermore, an analysis of the California Supreme Court's decision in the *Broughton* case reveals many reasons why *AT&T Mobility* should not prevent courts from deciding injunctive relief issues. For example, the Court was "cognizant of the evident institutional shortcomings of private arbitration in the field of public injunctions." *Broughton*, 21 Cal. 4th at 1081. The *Broughton* Court goes on to discuss these shortcomings. For example, a court retains jurisdiction over a public injunction while an arbitrator is not bound by earlier decisions of perhaps other arbitrators, which could result in inconsistency. *Id.* Also, an injunction rendered in an arbitration only affects the parties to the arbitration so a non-party would not be able to enforce the injunction rendered by an arbitrator. *Id*. And if a non-party sought to enforce the injunction, he or she would have to again arbitrate the entire issue. *Id*. In addition, the *Broughton* Court found that judges are more suitable for overseeing injunctions for the public good because they are accountable in ways arbitrators are not. *Id.*

Defendant might raise the cases of *Arellano v. T-Mobile USA, Inc.,* 2011 WL 1842712 (N.D. Cal. May 6, 2011) and *Zarandi v. Alliance Data Sys. Corp*., No CV 10-8309 (DSF) (JCGx) 2011 WL 1827228 at *2 (C.D. Cal. May 9, 2011), both decided less than two weeks

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

after *AT&T Mobility*. In *Arellano,* the court found that California's procedure exempting injunctive relief from arbitration was overruled in *AT&T Mobility*. In *Zaranda*, the court refused to bifurcate the plaintiff's injunctive relief claims. Plaintiff submits those cases were wrongly decided, as confirmed by the other cases discussed herein. In *Arellano,* the basis of the court's ruling is claimed to be found in the *AT&T Mobility* language: "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. *Concepcion*, 131 S.Ct. at *6." The court reasoned that because arbitration of injunctive relief is prohibited, it is therefore preempted. Similarly, the court did not conduct any more detailed analysis of *AT&T Mobility* in *Zaranda* as occurred in *Arellano.* But that short shrift of the *AT&T Mobility* case in those cases does not stand up to the more reasoned analysis of the history and purpose of injunctive relief under California law articulated months later in *Brown.*

It is clear that the injunctive relief sought in this case is for the public good, not to further a private remedy. *See Cruz*, 30 Cal.4th at 315. Therefore, the claims for injunctive relief should not be arbitrated.

### D. *AT&T MOBILITY V. CONCEPCION* DOES NOT REQUIRE ARBITRATION; TO THE CONTRARY, IT PRECLUDES ARBITRATION HERE

If a valid contract is found to exist, unless the statute specifically holds to the contrary, all actions may be brought as class actions under Federal Rules of Civil Procedure, Rule 23. "In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court. . . ." *Califano v. Yamasaki,* 442 U.S. 682, 700 (1979). The *Califano* Court explained that unless the statute is specifically exempted from class action treatment on its face, the Federal Rules of Civil Procedure, Rule 1 states that all other such Federal Rules of Civil Procedure apply, including Rule 23 governing class actions. *Id*. at 699-700. Thus, the action under the TCPA has not been exempted from class action treatment and should be permitted to proceed as a class action, and be permitted to try to satisfy the Rule 23 class certification requirements. To hold otherwise on a motion based upon a purported "contract" containing an arbitration clause, especially one Plaintiff had not agreed

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

to, makes a mockery of that right. Further, California has historically encouraged the use of the class action device. *Sav-On Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319, 339-340 (2004), citing *Richmond v. Dart Industries, Inc.,* 29 Cal.3d 462, 473 (1981).

Defendant argues that this Court should rubber-stamp their request to compel arbitration based primarily upon the *AT&T Mobility* case. However, that case is wholly distinguishable and does not mandate that result here. As to the mutual assent argument, *AT&T Mobility* compels the opposite result, mandating a finding that there was no agreement here. In addition, this is a case about the enforcement of a federal statute in a federal court, not the state law preemption issues of *AT&T Mobility*. As explained above, the present case is similar to the facts presented in *NAACP of Camden County East v. Foulke Management Corp*. In that case, the Court, which relied on *AT&T Mobility* in its decision, refused to order arbitration because it found no mutual assent because the arbitration agreements were confusing and contradictory.

Furthermore, while a finding of mutual assent is lacking in this case, *AT&T Mobility* does not hold that there are to be no more unconscionability arguments about arbitration agreements. As Judge Moskowitz recently held in permitting discovery limited to that issue in *Hamby v. Power Toyota Irvine*, 798 F.Supp. 2d. 1163, 1165 (S.D.Cal.), "AT&T Mobility LLC does not stand for the proposition that a party can never oppose arbitration on the ground that the arbitration clause is unconscionable," citing *Shroyer v. New Cingular Wireless Servs*., 498 F.3d 976, 981 (9th Cir. 2007) ("It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable.")

Furthermore, the Court in *Kanbar v. O'Melveny & Myers,* 2011 WL 2940690, 1 (N.D.Cal.), also made it clear that all the rules regarding unconscionability should not be disregarded after *AT&T Mobility*. There, the Defendant asked the Court to order arbitration based on essentially the same arbitration clause found earlier to be unconscionable in another case, *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007). The Defendant argued that *AT&T Mobility v. Concepcion* voided the prior 9th Circuit's finding of unconscionability. The Court disagreed, finding that the earlier analysis was not abrogated by *AT&T Mobility*. The Court held: "In *Concepcion*, the Supreme Court specifically noted that the FAA 'permits

agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' [although] not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' *Concepcion*, 131 S. Ct. at 1746. In short, arbitration agreements are still subject to unconscionability analysis." *Kanbar*, 2011 WL 2940690 at 6. The Court continued: "For the same reasons, the Court rejects OMM's contention that a challenge to an arbitration agreement must be rejected if it means that the agreement will not be enforced according to its terms. The doctrine of unconscionability can override the terms of an arbitration agreement and the parties' expectations in connection therewith." *Id.*

The arbitration agreement in *Kanbar* and *Davis* was found to be unconscionable because of problems with notice of claims, i.e., a modification of the statutes of limitations, a confidentiality provision, a provision exempting Defendant employer but not the employee from arbitration, and a ban on administrative actions. The *Kanbar* Court found the terms objectionable to the 9th Circuit in *Davis* are still objectionable in *Kanbar,* notwithstanding *AT&T Mobility*. The Court found that only if the provisions found to be unconscionable "interfere with the fundamental attributes of arbitration", as defined by *AT&T Mobility,* would the rule be preempted by the FAA. *Id.* at 9. The Court found that none of the rules making the arbitration agreement unconscionable were contrary to the FAA and therefore, held its "unconscionability determination based on state law is not preempted by the FAA." *Id.*

**E. THE CUSTOMER AGREEMENT IS UNENFORCEABLE AS IT IS AN UNCONSCIONABLE ADHESION CONTRACT**

As discussed above, the Customer Agreement, by virtue of being drafted solely by Sirius, the party with superior bargaining power over Plaintiff, is an adhesion contract. "An adhesion contract is unconscionable when both procedural unconscionability, meaning surprise or distress stemming from unequal bargaining power, and substantive unconscionability, meaning overly harsh or one-sided terms are present." *Id.* "The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts, Inc.,* 51 Cal.App. 4th 1519, 1533 (1997). However, *procedural and substantive unconscionability need not be present in the same degree*; the more



Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

substantively oppressive the contract term, the less evidence of procedural unconscionability is required to reach the conclusion that the term is unenforceable, and vice versa. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (2000).

"Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained, such as unequal bargaining power between the parties and hidden terms included in contracts of adhesion." *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1099 (2002). As regarding the issue of procedural unconscionability, "A finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853 (2001). As explained above, Sirius' Customer Agreement was drafted entirely by Sirius and provided no room for negotiation; it must be either accepted or rejected it in its entirety. The court in *Szetela* held that an amendment to a Cardholder Agreement, which told the plaintiff that he must "take it or leave it" was sufficiently oppressive to establish the necessary element of procedural unconscionability given that the only option available to the plaintiff if he did not agree to the terms was to cancel his account. *Szetela*, 97 Cal. App. 4th at 1100. Just like the Cardholder Agreement in *Szetela*, Sirius' Customer Agreement, which was drafted entirely by Sirius, is procedurally unconscionable given that the Customer Agreement left Plaintiff with no option but to cancel his service if he did not accept all of the terms of the Customer Agreement. This is further compounded by the fact that practically speaking, Sirius deprived Plaintiff of the opportunity to reject the terms of the Customer Agreement by waiting to provide Plaintiff with the Customer Agreement until after the time-frame allotted for in the agreement for Plaintiff to reject the agreement had expired.

Substantive unconscionability addresses the impact of the term itself, such as whether the provision is so harsh or oppressive that it should not be enforced. *Id.* at 1099-1100. The Customer Agreement only provides Plaintiff with the short timeframe of three business days after the activation of Plaintiff's receiver to reject the terms of the agreement. This term, taken together with Sirius' failure to provide Plaintiff with the Customer Agreement until over one month after the expiration of the three business day timeframe, clearly has a harsh and oppressive effect on Plaintiff given that it deprives Plaintiff of the opportunity to willingly enter

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705

into the contract. The short timeframe within which Plaintiff was able to reject the Customer Agreement, if not oppressive enough on its own, is made even more oppressive by the fact that as a direct result of Sirius' conduct, Plaintiff was provided with zero opportunity to accept or reject the agreement.

Thus, the terms of the Customer Agreement, taken together with the manner in which it was allegedly entered into, clearly demonstrate that Plaintiff was completely deprived of any opportunity to willingly or knowingly enter into the contract. A contractual agreement that is premised on the withholding of material terms of the contract cannot be enforceable. Given that the Customer Agreement is an adhesion contract which is both procedurally and substantively unconscionable, Plaintiff should not be bound by its terms.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that Defendant's motion be denied.

DATED: May 7, 2012

**KAZEROUNI LAW GROUP, APC**

BY: */S/ ABBAS KAZEROUNIAN*
ABBAS KAZEROUNIAN, ESQ.
ATTORNEYS FOR PLAINT

Kazerouni Law Group, APC
2700 N. Main Street, Ste. 1000
Santa Ana, CA 92705