

**FILED**

Feb 12 2015

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ AKR   DEPUTY

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 02 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

ERIK KNUTSON, individually and on
behalf of all others similarly situated,

         Plaintiff - Appellant,

  v.

SIRIUS XM RADIO INC.,

         Defendant - Appellee.

No. 12-56120

D.C. No. 3:12-cv-00418-AJB-NLS
U.S. District Court for Southern
California, San Diego

**MANDATE**

---

The judgment of this Court, entered November 10, 2014, takes effect this

date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

         FOR THE COURT:
         Molly C. Dwyer
         Clerk of Court

         Eliza Lau
         Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERIK KNUTSON, individually and on behalf of all others similarly situated,<br><br>          *Plaintiff-Appellant*,<br><br>   v.<br><br>SIRIUS XM RADIO INC.,<br>          *Defendant-Appellee.* | No. 12-56120<br><br>D.C. No.<br>3:12-cv-00418-<br>AJB-NLS<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted
February 7, 2014—Pasadena, California

Filed November 10, 2014

Before: Harry Pregerson, Michael R. Murphy[*],
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Pregerson

---

[*] The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

---

### Arbitration

The panel reversed the district court's order dismissing a putative class action under the federal Telephone Consumer Protection Act, and granting Sirius XM Radio Inc.'s motion to compel arbitration pursuant to the Federal Arbitration Act.

The plaintiff purchased a vehicle from Toyota that included a 90-day trial subscription to Sirius XM satellite radio. About a month after his trial subscription was activated, plaintiff received a "welcome kit" from Sirius XM that contained a Customer Agreement with an arbitration clause.

The panel held that Sirius XM failed to prove by a preponderance of the evidence the existence of an agreement to arbitrate. The panel held that a reasonable person in plaintiff's position could not be expected to understand that purchasing a vehicle from Toyota would simultaneously bind him or her to any contract with Sirius XM. The panel further held that plaintiff's continued use of the satellite radio service after his receipt of the Customer Agreement did not manifest his assent to the provisions in the Customer Agreement. Because the arbitration clause in the Customer Agreement was unenforceable for lack of mutual assent, the panel held it need not decide whether the arbitration provision in the Customer Agreement was unconscionable. The panel remanded for further proceedings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Abbas Kazerounian (argued) and Mohammad Kazerouni, Kazerouni Law Group, APC, Costa Mesa, California, for Plaintiff-Appellant.

Chad S. Hummel (argued), Becca Wahlquist, and Lydia M. Mendoza, Manatt Phelps & Phillips, LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

PREGERSON, Circuit Judge:

Plaintiff Erik Knutson ("Knutson") appeals the district court's order dismissing his putative class action and granting Defendant Sirius XM Radio Inc.'s ("Sirius XM") motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). Knutson alleges that he did not consent to enter into a binding Customer Agreement with Sirius XM, and that the Customer Agreement as a whole, and the arbitration provision specifically, are unconscionable.

In November 2011, Knutson purchased a vehicle from Toyota that included a 90-day trial subscription to Sirius XM satellite radio. About a month after his trial subscription was activated, Knutson received a "Welcome Kit" from Sirius XM that contained a Customer Agreement. Knutson alleges that during his trial subscription, he received three unauthorized calls from Sirius XM on his cellphone. In response to these calls Knutson, in February 2012, brought a class action suit against Sirius XM alleging violations of the federal Telephone Consumer Protection Act. The district

court found that both parties consented to enter into the Customer Agreement and that the arbitration clause was valid and enforceable under the FAA.

Knutson timely appealed the district court's judgment. We have jurisdiction under 28 U.S.C. § 1291. For the reasons set forth below, we reverse.

## FACTUAL BACKGROUND

### I.  Knutson's 90-day Trial Subscription to Sirius XM Radio

Sirius XM is a satellite radio service that broadcasts commercial-free channels to more than 20 million subscribers.  Sirius XM has arrangements with many major automakers, including Toyota, to install satellite radio receivers in new vehicles.  Under these arrangements, automakers, including Toyota, include a trial subscription to Sirius XM for some fixed period of time with the purchase or lease of a vehicle.  In November 2011, Knutson purchased a Toyota Tacoma truck, which came with a 90-day trial subscription to Sirius XM satellite radio.  Knutson's Sirius XM account was activated on November 7, 2011, for a trial period ending February 7, 2012.

On November 29, 2011, Sirius XM mailed a "Welcome Kit" to Knutson.  The Welcome Kit arrived in the mail on or about December 12, 2011, over a month after Knutson's satellite receiver was activated.  The Welcome Kit contained a Sirius XM Customer Agreement.

## II. Sirius XM's Customer Agreement

The Sirius XM Customer Agreement sets out the terms and conditions of use during a 90-day trial subscription. The Agreement states that failure to cancel the subscription within three business days of activation legally binds the customer to the agreement:

> BY ACCESSING OR USING THE SITE OR THE SERVICE, YOU AGREE TO BE LEGALLY BOUND BY THIS AGREEMENT. PLEASE DO NOT USE THE SITE OR THE SERVICE IF YOU DO NOT AGREE WITH THIS AGREEMENT.
>
> IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SUBSCRIPTION. IF YOU DO NOT CANCEL YOUR SUBSCRIPTION WITHIN 3 BUSINESS DAYS OF ACTIVATION OF YOUR RECEIVER, IT WILL MEAN THAT YOU AGREE TO THIS AGREEMENT WHICH WILL BE LEGALLY BINDING ON YOU.

A separate section entitled, "Cancellation," provides: "You may cancel your Subscription at any time by notifying Listener Care. Your cancellation will become effective on your next Subscription 'cycle date.'"

Sirius XM also retains the right to modify the Customer Agreement by "unilateral amendment . . . and the posting of such amended version" on the Sirius XM website. Section

6                    KNUTSON V. SIRIUS XM RADIO

B.1 of the Agreement reserves Sirius XM's right to change
the terms of the agreement at any time, and makes the
changes effective once Sirius XM posts the revised terms on
its website.  Customers are also advised to review the website
from time to time to check for revisions.

*The Arbitration Provision*

The arbitration provision of the Customer Agreement
states that "ANY DISPUTE MAY BE RESOLVED BY
BINDING ARBITRATION."[1]  By agreeing to arbitration,
"YOU ARE HEREBY WAIVING THE RIGHT TO GO TO
COURT, INCLUDING THE RIGHT TO A JURY."  The
Agreement requires that "[t]he party initiating arbitration
must follow the rules and procedures of the American
Arbitration Association ("AAA") . . . and the parties agree
that the arbitration shall be administered by the AAA."  A
copy of the AAA rules did not accompany the Customer
Agreement in the Welcome Kit.

Parties also waive their "right or authority for any claims
to be arbitrated on a class action basis."  The customer does
not "have the right to act as a class representative or
participate as a member of a class of claimants with respect
to any Claim submitted to arbitration ('Class Action
Waiver')."  The Class Action Waiver is "material and
essential to the arbitration of any disputes . . . and is
nonseverable from this agreement to arbitrate."  But the
"validity and effect of the Class Action waiver" must be
decided by a court.

---

[1] Alternatively, the parties may pursue a claim in small claims court.

Whoever files for arbitration pays the initial filing fee, unless that party obtains a fee waiver.  If the customer prevails, Sirius XM will reimburse the filing fee.  If there is a hearing, Sirius XM will pay the arbitrator fees for the first day of the hearing, and other fees "will be allocated as provided by the rules of the arbitration firm and applicable law."  The customer will not be "required to reimburse [Sirius XM] for any arbitration filing, administrative, or hearing fees in an amount greater than what [their] court costs would have been if the Claim had been resolved in a state court with jurisdiction."  Each party bears its own costs, regardless of which party prevails, but "a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines."

If any portion of the arbitration agreement or the Class Action waiver is "limited, voided or cannot be enforced, then the parties' agreement to arbitrate . . . shall be null and void with respect to such proceeding."  The parties have the "right to appeal the limitation or invalidation of the Class Action Waiver."  The limited or voided portion of the arbitration agreement would then be severed, and "the rest of the arbitration agreement will continue to apply."  If the entire arbitration agreement is declared "null and void, then the parties agree that any actions shall be brought in the State or Federal courts of New York, New York."

Knutson did not read the Customer Agreement when it arrived in the mail because he did not think "that any of the documents contained therein were a contract governing the terms of Sirius' service."  Knutson stated,

> I did not realize that there was [an arbitration] clause in the Customer Agreement until my

> attorneys so informed me . . . . I was not given
> an opportunity to review the arbitration clause
> or even the Customer Agreement itself at the
> time that my receiver was activated given that
> the Customer Agreement was not provided to
> me at that time.

Knutson neither contacted Sirius regarding his subscription, nor asked to end his trial subscription.

During the 90-day trial period, Knutson received three telemarketing calls from Sirius XM.  Knutson alleges that these calls were "unauthorized and unsolicited," and violated the Telephone Consumer Protection Act.  Knutson then sought to become a representative plaintiff in a nationwide class action asserting violations of the Telephone Consumer Protection Act.

## PROCEDURAL BACKGROUND

In February 2012, Knutson brought a class action suit against Sirius XM, alleging violations of the federal Telephone Consumer Protection Act.  In response to Knutson's class action complaint, Sirius XM filed a motion to compel arbitration on April 23, 2012.  Sirius XM asserted that the Customer Agreement is a binding contract that governs the parties' relationship.  Thus, the Customer Agreement "requires [Knutson] to arbitrate on an individual basis and waive any right to participate as a class representative . . . with respect to any claim against Sirius XM."

On May 9, 2012, Knutson filed an opposition to Sirius XM's motion to compel arbitration.  Knutson responded that

the Customer Agreement was not binding because Sirius XM mailed the Agreement over a month after the three-day designated period in which Knutson could reject the terms of the Agreement.  Therefore, Knutson argued, there was no mutual assent to the terms.  Knutson also claimed that enforcement of the arbitration clause would limit his potential remedies, specifically his statutory right to seek damages under the Telephone Consumer Protection Act.  In addition, Knutson alleged that Sirius XM's Customer Agreement "is unenforceable as it is an unconscionable adhesion contract."

On May 20, 2012, District Judge Anthony J. Battaglia held that there was a binding contract requiring arbitration because the terms of the Customer Agreement are conspicuous, and the contract is enforceable even though Knutson received the Agreement over one month after the service was activated.  Although the arbitration provision in the Customer Agreement had "elements of procedural unconscionability" for failing to provide a copy of the AAA rules, "the Agreement contains all the hallmarks of substantive conscionability."  The district court granted Sirius XM's motion to compel arbitration, and dismissed Knutson's case.  The instant appeal followed.

## STANDARD OF REVIEW

"The district court's decision to grant or deny a motion to compel arbitration is reviewed de novo."  *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).  This court also "review[s] the validity and scope of an arbitration clause *de novo*" and "the factual findings underlying the district court's decision for clear error."  *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 917 (9th Cir. 2011).

## DISCUSSION

The Federal Arbitration Act ("FAA") provides that arbitration agreements generally shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. But where grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements. *Id.* This provision reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted). Under the FAA, the basic role for courts is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

As explained below, applying well-settled principles of contract law, we conclude that no valid agreement to arbitrate exists between Knutson and Sirius XM because Knutson never assented to the Customer Agreement.

### No valid agreement exists between Knutson and Sirius XM.

Sirius XM, as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

"[A]rbitration is a matter of contract." *AT&T Techs., Inc.*, 475 U.S. at 648 (internal quotation marks and citation

omitted). State contract law controls whether the parties have agreed to arbitrate. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (noting that although the FAA preempts state laws that are only applicable to arbitration agreements, general contract principles and defenses "grounded in state contract law, may operate to invalidate arbitration agreements") (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). It is undisputed that under California law, mutual assent is a required element of contract formation. "Mutual assent may be manifested by written or spoken words, or by conduct," *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999), and acceptance of contract terms may be implied through action or inaction, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991). Thus, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991 (1972). Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement. *Meyer v. Benko*, 55 Cal. App. 3d 937, 942–43 (1976).

Knutson contends that there was no mutual assent to enter into the Customer Agreement because he was never given the opportunity to accept or reject the Agreement. Sirius XM asserts that after Knutson received the Customer Agreement, he had an opportunity to both review it and to notify Sirius XM if he wished to cancel his subscription, but Knutson did

12          Knutson v. Sirius XM Radio

neither.  Instead, Sirius XM argues, Knutson continued using
Sirius XM's service, which indicated his acceptance of the
Customer Agreement, and thus a valid contract between the
parties was formed.  Accordingly, we consider (1) whether a
reasonable person in Knutson's position would understand
that he had assented to the arbitration provision in the Sirius
XM Customer Agreement when he purchased the vehicle
from Toyota, and (2) whether failure to cancel the trial
subscription to Sirius XM after he received the Customer
Agreement constituted an objective manifestation of his
assent to the arbitration provision.

    1.  "[A]n offeree, regardless of apparent manifestation of
his consent, is not bound by inconspicuous contractual
provisions of which he was unaware, contained in a document
whose contractual nature is not obvious."  *Windsor Mills,
Inc.*, 25 Cal. App. 3d at 993.  "This principle of knowing
consent applies with particular force to provisions for
arbitration."  *Id.*  "If a party wishes to bind in writing another
to an agreement to arbitrate future disputes, such purpose
should be accomplished in a way that each party to the
arrangement will fully and clearly comprehend that the
agreement to arbitrate exists and binds the parties thereto."
*Com. Factors Corp. v. Kurtzman Bros.*, 131 Cal. App. 2d
133, 136 (1955) (internal quotation marks and citation
omitted).  That is not the case here.

    When Knutson purchased his vehicle from Toyota, he did
not receive any documents from Sirius XM, and he did not
know that he was entering into a contractual relationship with
Sirius XM by using the service.  Instead, he believed that
Sirius XM's trial subscription was a complimentary service
"provided for marketing purposes."

As far as Knutson was concerned, then, he had not entered into an agreement for service *with Sirius XM* when he purchased the vehicle. He was, as far as he knew, only in a contractual relationship with Toyota. A reasonable person in Knutson's position could not be expected to understand that purchasing a vehicle from Toyota would simultaneously bind him or her to any contract with Sirius XM, let alone one that contained an arbitration provision without any notice of such terms. "[N]either expressly or impliedly, neither directly or indirectly, did the parties ever discuss arbitration or bargain about it, and certainly they reached no agreement thereon." *Com. Factors Corp.*, 131 Cal. App. 2d at 136.

**2.** Sirius XM argues nevertheless that although there was a delay between the activation of the service and Knutson's receipt of the Customer Agreement, Knutson's continued use of its service after that receipt constituted his assent to be bound to the Customer Agreement. Sirius XM cites *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, which states that "[a]s a general rule, silence or inaction does not constitute acceptance of an offer. There are several well-recognized exceptions to this rule. Acceptance of an offer may be inferred from inaction in the face of a duty to act . . . and from retention of the benefit offered." 20 Cal. App. 4th 1372, 1385–86 (1993) (citations omitted); *see also* Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.").

Nothing in the record, however, indicates that Sirius XM's offer was clearly and effectively communicated to Knutson by mailing him the Customer Agreement. Knutson would only have had notice of his opportunity to cancel his

subscription, or the effect of his continued use of the service, if he opened the Welcome Kit from Sirius and read all of the documents therein, which—in view of his lack of awareness of any contractual relationship with Sirius—he had no reason to do. He could not be obligated to act where there was no effective notice that action was required. Accordingly, Knutson's continued use of the service after his receipt of the Customer Agreement did not manifest his assent to the provisions in the Customer Agreement.

**3.** Sirius XM further argues that its Customer Agreement is a valid "shrinkwrap" agreement—"where the consumer purchases prior to getting the detailed terms of the contract." *Meridian Project Sys. Inc., v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101, 1107 (E.D. Cal. 2006). As a general rule, a party cannot avoid the terms of a contract by failing to read them before signing. *See Marin Storage & Trucking v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001). Yet "[a]n exception to this general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient. In such a case, no contract is formed with respect to the undisclosed term." *Id.* That is what happened here.

Sirius XM contends, nevertheless, citing *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002), and *Lozano v. AT&T Wireless*, 216 F. Supp. 2d 1071 (C.D. Cal 2002), *order vacated on other grounds by Lozano v. AT&T Wireless*, 2003 WL 2558566 (C.D. Cal. Aug. 18., 2003), that courts have held the fact that the customer purchased the service and was later sent the contract terms does not render the contract unenforceable. But even assuming, without deciding, that such cases accurately reflect the law of our circuit, these decisions are inapposite.

In *Bischoff*, the district court held that a valid and enforceable arbitration agreement existed between the parties even though the plaintiff received the customer agreement after initiating a purchase from DirecTV, the service provider. 180 F. Supp. 2d at 1103–06. The DirecTV customer agreement arrived by mail after the plaintiff purchased DirecTV equipment, after he elected to receive DirecTV programming, and after the activation of satellite television service. *Id.* at 1101. The district court reasoned that the time between the receipt of the agreement and the activation of services was not "dispositive on the issue of whether a valid arbitration agreement exists." *Id.* at 1105. Instead, "[t]he more controlling issue is the economic and practical considerations involved in selling services to mass consumers which make it acceptable for terms and conditions to follow the initial transaction." *Id.*; *see also Lozano*, 216 F. Supp. 2d at 1073 ("providing customers with terms and conditions after an initial transaction is acceptable, and [] such terms and conditions are enforceable, including arbitration clauses.").

But *Bischoff* and *Lozano* turn on crucial facts not present here. In *Bischoff*, unlike with Knutson, the customer specifically elected to receive the service *directly* from the service provider:

> To obtain [television programming] services, a potential DirecTV customer first purchases from a retailer the equipment necessary to receive a satellite signal. The potential customer then calls DirecTV and becomes a subscriber by electing to receive one or more of DirecTV's numerous programming packages. A "Customer Agreement," which governs the relationship formed between

> DirecTV and the customer, is then mailed to each customer along with the first billing statement.

*Bischoff*, 180 F. Supp. 2d at 1101 (internal citations omitted). Likewise in *Lozano*, the customer signed a contract for service from the service provider, AT&T, and a Welcome Guide was provided in the box with the newly purchased phone. *Lozano*, 216 F. Supp. 2d at 1073 n. 1.

Here, by contrast, there is no evidence that Knutson purchased anything from Sirius XM, or ever knew that he was entering into a contractual relationship with the satellite radio service provider. Unlike in *Bischoff*, there was no initial transaction between Knutson and the service provider, Sirius XM. There was only a transaction between Knutson and Toyota—Knutson purchased a Toyota truck that came with a pre-loaded Sirius XM radio receiver, and upon purchasing the vehicle Knutson received a trial subscription to Sirius XM. There is no information in the record about what, if any, language regarding the Sirius XM trial subscription was in the Toyota purchase contract. As discussed above, it was never clear to Knutson that he was entering into an agreement with Sirius XM—he received no documents about his relationship with Sirius XM at the outset, nor ever understood that his use of the satellite radio service bound him to the terms of the Customer Agreement he would later receive from Sirius XM. Thus, neither *Bischoff* nor *Lozano* supports Sirius XM's argument that the Customer Agreement is supported by mutual assent.

**4.** Even considering the "economic and practical considerations involved in selling services to mass consumers," *Bischoff*, 180 F. Supp. 2d at 1105, lack of notice

regarding the terms of the Sirius XM Customer Agreement could be easily remedied by Toyota. The Toyota purchase agreement could clearly state that Toyota has a relationship with Sirius XM to provide Toyota customers with a trial service, and that therefore the Toyota customer is entering into a contractual relationship with Sirius XM. Toyota could also provide its customers with literature that similarly explains the agreement between Sirius XM and the Toyota customer and ask for assent to such agreement. Because Sirius XM's offer was not effectively communicated, there was no knowing consent to the Customer Agreement, including the arbitration clause within it.

Applying California law, the Second Circuit has similarly held that a party to a contract cannot be held to the contract's arbitration provision where the plaintiff does not know a contract exists. In *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012), plaintiffs made purchases using the travel website Priceline.com and the sports memorabilia website Beckett.com, and then separately enrolled in a discount subscription service with a separate merchant, *id*. at 114. The enrollment webpage from the original merchant indicated that the customer had received a "Special Award." *Id.* at 115. The plaintiffs were then "presented with separate 'enrollment offer' [web]pages and entered personal information into the fields on those pages." *Id.* In small print, the enrollment page stated that the customer would receive membership information, and that there was no obligation to continue to receive benefits: "[The purchaser can] call us to cancel before the end of . . . [the] FREE trial and owe us nothing." *Id.* at 115–16 (alterations in original). The plaintiffs' credit cards were then auto-debited during the months of their membership.

The *Schnabel* plaintiffs claimed that they did not intentionally or knowingly enroll in the second merchant's discount service, and thus their failure to cancel the service did not indicate their assent to the arbitration provision included in the second merchant's contract terms. *Id.* at 114. As in the present case, the *Schnabel* plaintiffs argued that it was not clear that the second merchant's enrollment form was an offer from "a party other than the merchant with whom the [customer was] in the process of completing a purchase." *Id.* at 115.

Unlike the present case, the *Schnabel* plaintiffs affirmatively elected to receive the second merchant's services—plaintiffs provided their personal information into a separate enrollment form, and clicked a "Yes" button to indicate that they had read the "Terms & Conditions" of the agreement. *Id.* at 115–16.  If the purchaser clicked on the "Terms & Conditions" hyperlink, the purchaser would see a webpage that included the arbitration provision at issue. *Id.* at 116.  A separate email was also sent to the plaintiffs that included the terms of the agreement with the second merchant. *Id.*

Even though the plaintiffs in *Schnabel* had more notice of the terms of their agreement than Knutson, the Second Circuit held that the arbitration provision was unenforceable. Although the second merchant sent the agreement containing the arbitration provision after the customer's enrollment in and use of the service,

> there was no prior relationship between the parties that would have suggested that terms sent . . . after the initial enrollment were to become part of the contract. . . . Nor would a

> reasonable person likely understand in some
> other way that disputes arising between him
> or her and [the service provider] were to be
> resolved by an alternative dispute resolution
> procedure.

*Id.* at 126.  The Second Circuit also determined that the auto-debiting of the plaintiffs' credit cards was "too passive for any reasonable fact-finder to conclude that they manifested a subjective understanding of the existence of the arbitration and other emailed provisions and an intent to be bound by them in exchange for the continued benefits [the second merchant] offered."  *Id.* at 128–29.

As in *Schnabel*, Knutson could not assent to Sirius XM's arbitration provision because he did not know that he was entering into a contract with Sirius XM.  We find the reasoning of the Second Circuit persuasive, especially because Knutson provided even less indication of his assent than the customers in *Schnabel*.  Knutson did not affirmatively enroll in a subscription service with Sirius XM.  He did not separately provide his personal information to Sirius XM.  He did not indicate that he had read the terms of the Sirius XM Customer Agreement.  And he did not pay Sirius XM at any point during the trial subscription period.  Instead, "[Knutson] respond[ed] to an offer that did not carry an immediately visible notice of the existence of [contract] terms or require unambiguous manifestation of assent to those terms."  *Specht v. Netscape Com. Corp.*, 306 F.3d 17, 31 (2d Cir. 2002) (applying California law to hold that defendants did not provide reasonable notice of software license terms where a reasonably prudent Internet user would not have known or learned of the existence of the terms before responding to defendant's invitation to download free

software); *see also Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) ("[C]ourts have consistently enforced [terms of use] agreements where the user had actual notice of the agreement . . . [or] where the user is required to affirmatively acknowledge the agreement before proceeding with use of the [service]," but not where "there is no evidence that the [service] user had actual knowledge" or that a reasonably prudent user would have been on inquiry notice that a terms of use agreement existed.).

For the reasons stated above, Sirius XM has failed to prove by a preponderance of the evidence the existence of an agreement to arbitrate. Because the arbitration clause in the Customer Agreement is unenforceable for lack of mutual assent, we need not decide whether the arbitration provision in the Customer Agreement is unconscionable.

## CONCLUSION

For the foregoing reasons, we reverse the district court's granting of Sirius XM's motion to compel arbitration. We remand to the district court for further proceedings consistent with this disposition.

**REVERSED and REMANDED.**